UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:25-CR-130 |
| v. | ) | |
| | ) | JUDGE CORKER |
| CAYDEN BROCK NEWBERRY | ) | |

**PLEA AGREEMENT PURSUANT TO FED. R. 11(c)1(C)**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Cayden Brock Newberry, and the defendant's attorney, LaRae Ganger, have agreed upon the following:

1. The defendant will plead guilty to the following count in the indictment:

a) Count 1 – Production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e).

The punishment for this offense is as follows. A minimum mandatory 15 years imprisonment up to 30 years, five years up to life of supervised release, up to a $250,000 fine, and a $100 special assessment fee.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining count against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime charged. Specifically, the elements of the offense are as follows: (1) that the defendant used, induced, enticed, persuaded, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct;

and (2) that the defendant knew or had reason to know that the visual depiction would be transmitted or was produced using any means or facility of interstate commerce.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) On or about September 23, 2025, the FBI Newark Division was notified by the Somerset County Prosecutor's Office (New Jersey) regarding a report made on September 14, 2025, by the parent of a minor victim who produced CSAM and committed self-harm at the direction of an unknown male who investigators eventually identified as the defendant. According to the report, the minor victim met the defendant online via Roblox several months prior and the conversation moved to Discord, which the minor victim accessed through a PlayStation 5. The defendant and minor victim used Discord to video chat. In August 2025, the defendant sent a cellular telephone to the minor victim via DoorDash so they could exclusively and discreetly communicate.

b) The minor victim stopped answering the defendant shortly after receiving the phone and, out of jealousy and anger, the defendant threatened to come to the minor victim's residence. Following this threat, the defendant coerced the minor victim into sending CSAM and committing acts of self-harm. This interaction with the defendant escalated into other adults joining the chat and requesting additional acts of self-harm from the minor victim.

c) On September 18, 2025, a preliminary search of the IP address returned to ISP Brightridge out of Johnson City, TN. Cellular telephone number x5481 resolved to Verizon Wireless and open-source research revealed a registered Snapchat account, cayden20255356 (username), with a display name of Cayden.

d) A subpoena was issued to DoorDash for phone number x5481 requesting records from January 1, 2025, through October 23, 2025. DoorDash provided returns showing 25 transactional records for that account. 24 of those transactions were delivered to 114 West Poplar St., Johnson City, TN 37604. One transaction was delivered to an address in Raritan, NJ, which law enforcement recognized as the minor victim's address.

e) On September 29, 2025, the minor victim was forensically interviewed by the Somerset County Prosecutor's Office in New Jersey. The following information was provided by the minor victim during the forensic interview:

1) Minor victim first met the defendant on Roblox and was extorted into committing self-harm by carving or fansigning his name onto her leg. Specifically, the defendant instructed the minor victim to write his name onto the minor victim's legs with a marker. Subsequently, other adults would join the chat and ask her to carve their initials into her leg with a sharp object. Minor victim followed the instructions and physically harmed herself while sending pictures and videos.

2) Defendant purchased the minor victim a phone at Target and sent it to her through DoorDash. The phone was delivered with a SIM card and PIN. The purpose of the phone was for the defendant and the minor victim to be in contact. The minor victim downloaded Discord and Instagram, amongst other applications, to the new phone.

3) The minor victim recalled that the defendant's Discord username was "Seven" followed by several other numbers. This username was on the minor victim's "blocked" list on Discord.

4) The minor victim described the defendant as nineteen years old with long hair, blue eyes, and facial hair described as "stubble."

5) The minor victim and the defendant communicated often via calls on Discord. The defendant also provided a Telegram username to the minor victim for them to communicate.

6) The defendant threatened to extort the minor victim unless the minor victim got on camera and masturbated on Facetime. The defendant used a computer during this instance.

7) A day or so later, the defendant added the minor victim to a group chat with other accounts on Discord which consisted of other extorters who made girls carve their name onto their arms. The minor victim left the chat and blocked the defendant due to not trusting him.

8) A different Discord user informed the minor victim about the process for gaining admission to a 764 group, and that the content produced by the minor victim was used by individuals for the purpose of admission. This Discord user informed minor victim of fansigns, as well as sexually explicit photos and videos being sought by members of the 764 group. Individuals obtained this content and shared it with a "boss" in order to join the group.

9) The minor victim described the group "T7K" on RecRoom as similar to the 764 groups, which the minor victim was aware of because she has previously played RecRoom.

10) The defendant showed the minor victim a Telegram group chat where images and content were shared. The cover photo of the Telegram group showed a girl's arm with the number 7 and other characters carved/cut into the skin. The image was described by minor victim as showing deep cutting into the flesh of a person. Minor victim was told that groups are moderated, and in order to gain admission to the groups, you are required to send at least two pieces of content. The minor victim described "content" as images or video(s) showing either blood and a name or full nudity with a name.'

11) Minor victim was specifically instructed by the defendant to send photos and videos of herself naked and masturbating. The minor victim understood "masturbation" as "pleasuring yourself" by "playing with your private parts."

12) Minor victim sent CSAM on multiple occasions to at least three different individuals, including the defendant. Videos of the minor victim was sent to the defendant showed her masturbating with a hairbrush, and her vagina was visible. When the defendant learned the minor victim owned thigh-high stockings, the defendant requested the minor victim to create videos wearing the stockings. The defendant also requested the minor victim say his name, "Caden," during the masturbation video.

13) The defendant showed his face to the minor victim, and the photos he sent to the minor victim looked like they were captured with a computer.

14) The minor victim and the defendant communicated frequently through calls. The minor victim described the defendant's voice as sounding American. The defendant and the minor victim played Roblox while on the phone with each other. During one of their conversations, the defendant explained the meaning of "fansigning" to the minor victim. He also talked about extorting other people through Telegram.

15) The minor victim and the defendant communicated over the summer every day for at least a week or two.

16) Minor victim was shown a photograph of an individual known to investigators to be the defendant. The minor victim identified the photograph as being "Caden," whom minor victim had seen during conversations.

f. Following his arrest on the federal complaint, the defendant was given his Miranda Warnings and agreed to be interviewed by the FBI. During the interview, the defendant admitted to talking to a female in New Jersey but stated that he believed her to be 17 years old. The defendant could not give any explanation as to why he believed that to be her age. The defendant further admitted to sending the minor victim a cellular phone. The defendant confessed little else, either saying that certain things "may have happened," or that he was having difficulty remembering anything.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. a) Pursuant to Rule 11(c)1(C), the defendant and the United States agree that a guideline range of 210 months to 262 months is the appropriate disposition of this case, even if it differs from the guideline range calculated in the Presentence Investigation Report. Additionally, the Court may impose any lawful fine(s) and any special assessment fees as required by law, and order forfeiture as applicable and restitution as appropriate. In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

b) For the purposes of this plea agreement and pursuant to Rule 11(c)(1)(C), the parties agree that a two-level enhancement under U.S.S.G. 2G2.1 (b)(1)(B) for a minor victim over twelve years of age but less that sixteen should be applied in this case.

c) For the purposes of this plea agreement and pursuant to Rule 11(c)(1)(C), the parties agree that a two-level enhancement under U.S.S.G. 2G2.1 (b)(2)(A) for a sex act with a minor victim should be applied in this case.

d) For the purposes of this plea agreement and pursuant to Rule 11(c)(1)(C), the parties agree that a four-level enhancement under U.S.S.G. 2G2.1 (b)(4)(A) for the involvement of sadistic or masochistic conduct or other displays of violence should be applied in this case.

e) For the purposes of this plea agreement and pursuant to Rule 11(c)(1)(C), the parties agree that a two-level enhancement under U.S.S.G. 2G2.1 (b)(6)(B) for the use of a computer in the commission of the instant offense should ***not*** be applied in this case.

f) For the purposes of this plea agreement and pursuant to Rule 11(c)(1)(C), the parties agree that a two-level enhancement under U.S.S.G. 2G2.1 (b)(3) for distribution of CSAM should ***not*** be applied in this case.

g) For the purposes of this plea agreement and pursuant to Rule 11(c)(1)(C), the parties agree that the cross reference under U.S.S.G. 2G2.1 (d) should ***not*** be applied in this case.

h) For the purposes of this plea agreement and pursuant to Rule 11(c)(1)(C), the parties agree that an aggravating role enhancement under U.S.S.G. 3B1.1 should ***not*** be applied to this case.

i) For the purposes of this plea agreement and pursuant to Rule 11(c)(1)(C), the parties agree that a vulnerable victim enhancement under U.S.S.G. 3A1.1 should ***not*** be applied in this case.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such

motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of 18 U.S.C. § 2251(a) and (e), and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

In the event a money judgment forfeiture is ordered, the defendant agrees to send all money judgment payments to the United States Marshals Service. The defendant also agrees that the full

money judgment amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody, the defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money judgment by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of the money judgment without notifying defendant's counsel and outside the presence of the defendant's counsel.

10. Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or

other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without

limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. The defendant acknowledges that the defendant has been advised and understands that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: (1) where the defendant resides; (2) where the defendant is employed; and (3) where the defendant is a student. The defendant understands that the requirements for registration include providing: (1) the defendant's name; (2) residence address; and (3) the names and addresses of any places where the defendant is, or will be, an employee or a student, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which the defendant resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant has been advised, and understands, that failure to comply with these obligations will subject the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by imprisonment, a fine, or both.

13. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. (Indeed, because the defendant is pleading guilty to 18 U.S.C. § 2251(a) and (e), removal is presumptively mandatory.) Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of the defendant's conviction on immigration status. The defendant nevertheless affirms that the defendant wants to

plead guilty regardless of any immigration consequences the plea may entail, even if the consequence is automatic removal from the United States.

14. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

15. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

16. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the

defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

9/10/26
Date

By: Thomas A. McCauley
Assistant United States Attorney

9/8/26
Date

Cayden Brock Newberry
Defendant

9/8/26
Date

LaRae Ganger
Attorney for the Defendant